# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY MURRAY, | Case No. 1:12-cv-00552-LJO-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT THE COMMISSIONER'S DECISION BE AFFIRMED** |
| v. | |
| | **OBJECTIONS DUE: 21 DAYS** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | (Doc. 1) |
| Defendant. | |
| _____/ | |

## INTRODUCTION

Plaintiff Danny Murray ("Murray") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. § 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge. For the reasons set forth below, it is RECOMMENDED that the Commissioner's decision be affirmed.

## BACKGROUND

Plaintiff was born on February 16, 1963, and claims to have completed a General Educational Development ("GED") certificate in 1986. (AR 160, 249). Plaintiff has filed several

applications for SSI, beginning in 2001, which were previously denied. His most recent application for SSI, filed in August 2005 (AR 180), alleges disability beginning in May 2002 due to arthritis, mental impairments, a right-hand injury, and right-knee problems (AR 147).

**A.    Relevant Medical Evidence** [1]

On February 23, 2003, Plaintiff underwent a psychiatric evaluation by Ekram Michiel, M.D. (AR 400-03.) Plaintiff reported that he felt tense and angry, and he loses control without any provocation. (AR 400.) Plaintiff also admitted to using cocaine three times a week. (AR 400.) Dr. Michiel assessed Plaintiff with cocaine dependence and a cocaine-induced mood disorder, and he assigned Plaintiff a Global Assessment of Functioning ("GAF")[2] score of 55 to 60. (AR 402.) He opined that Plaintiff was able to maintain adequate attention and concentration and the ability to carry out one-or two-step simple job instructions, but Plaintiff was unable to carry out an extensive variety of technical or complex instructions. (AR 402.)

On May 15, 2004, Dr. Michiel again completed a psychiatric evaluation of Plaintiff. (AR 541-43.) Plaintiff reported that he felt depressed and he was unable to sleep at night. (AR 541.) He noted he was "tired all the time" and got angry easily. (AR 541.) He admitted to cocaine and alcohol use. (AR 541.) Dr. Michiel again diagnosed Plaintiff with cocaine dependence, "in early remission if he is reliable in his history." (AR 543.) Dr. Michiel opined that Plaintiff would be able to maintain attention and concentration to carry out one- or two-step simple job instructions, he would be able to relate and interact with co-workers, supervisors, and the general public. However, Plaintiff would be unable to carry out an extensive variety of technical or complex instructions. (AR 543.)

On November 7, 2005, Plaintiff underwent a comprehensive psychiatric evaluation conducted by Brad Johnson, M.D., a board-eligible psychiatrist. (AR 457-60.) Plaintiff complained of stressors including that three family members had been murdered in the last year.

---

[1] Although the Court has considered the entire record, only the medical records relevant to Plaintiff's mental impairments are set forth below because Plaintiff's arguments on appeal are limited to the Administrative Law Judge's ("ALJ") consideration of his mental impairments.

[2] A GAF score considers an individual's overall level of psychological, social, and occupational functioning. American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 2000) ("DSM-IV"). A score of 55 indicates moderate difficulty in social, occupational, or school functioning. *Id.*

2

Plaintiff indicated that he experienced decreased sleep, concentration, poor energy, poor appetite, weight loss, a lack of interest in his hobbies and activities, as well as a sense of hopelessness about his future. (AR 457.) Upon mental status examination, Dr. Johnson noted that Plaintiff was moderately groomed; cooperative but maintained poor eye contact; his thought process was logical and goal directed; and his mood was stressed, but he denied suicidal, homicidal, or paranoid ideation. (AR 458.) Dr. Johnson provided the following discussion of Plaintiff's examination:

> The claimant's problem is treatable with a good likelihood of recovery. His condition will likely improve within the next 12 months with appropriate medication and therapy intervention.
>
> The claimant's inability to recall more than one item at three minutes with prompting appears to have a volitional component. When initially asked to recall the three items, he stated, in rapid succession, "car, plane, bus," of which only *car* was accurate. The claimant could not pick the other two items out of a list, even with extensive prompting. Considering how well he did in other components of the exam, it is unlikely that he would not be able to provide at least one of the three items with extensive prompting. This is indicative of, but not conclusive of, an attempt to malinger.
>
> . . .
>
> The claimant has the ability to perform simple and repetitive tasks. He has the ability to perform detailed and complex tasks. He can accept instructions from supervisors and interact with coworkers and the public. The claimant can perform work activities on a consistent basis but may require special or additional supervision as evidenced by his poor recall and memory. He can maintain regular attendance in the workplace. He can complete a normal workday/workweek without interruptions from a psychiatric condition. The claimant can deal with the usual stress encountered in competitive work.

(AR 459-60.)

In April 2006, Plaintiff began receiving treatment for depression from Fresno County Mental Health. (AR 475-507.) An adult comprehensive assessment was performed, and Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"), as well as alcohol and cannabis abuse. (AR 505.) Plaintiff reported that he had experienced the death of two of his brothers in 2005, and he had been depressed since then. He was assigned a GAF score of 40 (AR 506), indicating major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. DSM-IV at 34.

3

In May 2006, a progress note signed by Zachary Sharman, DO, assigned Plaintiff a GAF score of 55, and indicated that Plaintiff was to continue therapy every two weeks. (AR 495.) The progress note states that Plaintiff was receiving counseling from Roy Hines, LCSW (Licensed Clinical Social Worker), but that this examination was his first time seeing a psychiatrist. (AR 494.) Dr. Sharman indicated that there seem to be no biological predisposition to development of a mood or anxiety disorder. (AR 494.) However, the sudden loss of key figures triggered Plaintiff's current symptoms "which are in excess of what one would expect from a typical bereavement process." (AR 494.) Dr. Sharman noted that he suspected that "there is an underlying personality component that has been unmasked given his lifelong struggles with drugs, relationship difficulties, and criminal behavior." (AR 495.) Dr. Sharman prescribed Fluoxetine and Trazodone. (AR 495.)

In June 2006, Dr. Sharman completed a medical report form stating that Plaintiff was temporarily unable to perform full time work due to PTSD. (AR 753.) In July 2006, Plaintiff's social worker, Mr. Hines, completed a form for the County of Fresno General Relief program stating that Plaintiff was unable to work. (AR 754.) Mr. Hines also completed a second form in May 2007 stating that Plaintiff's memory remained very impaired and his concentration was poor. (AR 642.) He opined that, because Plaintiff was unable to focus for "very long," this problem would "prevent completion of tasks or work assignments." (AR 642.)

In September 2007, Neil A. Smith, DO, submitted an opinion regarding Plaintiff's psychiatric condition. (AR 755-58.) He indicated that Plaintiff would have difficulty relating and interacting with supervisors or co-workers due to his mental health issues; Plaintiff's concentration was poor; he was likely unable to deal with the public due to his extreme anxiety and paranoia; it was "likely not possible" for Plaintiff to maintain concentration and attention for at least two hour increments "due to attention instability"; and it would likely be very difficult for Plaintiff to withstand stress and pressures associated with an eight-hour workday. (AR 755.)

In October and November 2008, Plaintiff was seen at Fresno County Mental Health by Dr. Otero, a psychiatrist. He assigned Plaintiff a GAF score of 55 and 50, respectively. In October he noted that Plaintiff's mood and affective range were normal, but Plaintiff was "tired-looking."

4

(AR 697.) Dr. Otero diagnosed major depressive disorder without psychotic features, and recommended that Plaintiff resume taking Abilify medication. (AR 697.) In November 2008, Dr. Otero noted that Plaintiff exhibited a depressed mood and a constricted affective range, and diagnosed Plaintiff with major depressive disorder and PTSD. (AR 695). He recommended that Plaintiff resume Clonazepam medication. (AR 695.)

On January 3, 2009, Plaintiff again underwent a psychiatric evaluation by Dr. Michiel. (AR 683-85.) Plaintiff reported that he was traumatized by the deaths of his brothers in 2005, he is unable to sleep at night, and he has no interest in doing anything. (AR 683.) Dr. Michiel noted that Plaintiff was under the care of Fresno County Mental Health and had been seeing a psychiatrist and a therapist since 2006. (AR 683.) Upon examination, Dr. Michiel diagnosed Plaintiff with a depressive disorder, not otherwise specified and assigned him a GAF score of 55 to 60. (AR 685.) Dr. Michiel opined that Plaintiff would be able to maintain concentration and attention to carry out simple job instructions. (AR 685.) He also opined that Plaintiff would be able to relate and interact with co-workers, supervisors, and the general public. (AR 685.)

Also in January 2009, Fresno County Mental Health treatment notes indicate that Plaintiff was seen again by Dr. Otero. (AR 695.) Dr. Otero assigned Plaintiff a GAF score of 55, noting that Plaintiff's mood was irritable and his affective range was "mood-congruent." (AR 695.)

April 2009 treatment records from Fresno County Mental Health indicate that Plaintiff was depressed, sad, and lonely. (AR 686.) Plaintiff stated that his medications helped him some, but he had no energy to do things. (AR 686.) The treater assessed a GAF score of 45. (AR 690.)

On May 19, 2009, Richard Morgatt, Ph.D., completed a form on Plaintiff's behalf for General Relief. He indicated that Plaintiff's disability was temporary, and he expected to release him for work in November 2009. (AR 708.)

In July 2009, Archimedes Garcia, M.D., completed a form indicating that he was treating Plaintiff for major depression. (AR 761.) He indicated that Plaintiff's medications were helping, but Plaintiff's prognosis was guarded. (AR 761.) He noted that Plaintiff had a fair ability to maintain his personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (AR 762.)

5

**B.     Administrative Proceedings**

Plaintiff's SSI claim was denied initially in February 2006 (AR 147-51), and again on reconsideration in April 2006 (AR 155-59). Plaintiff requested a hearing before an ALJ, and a hearing was held on June 1, 2007. (AR 785-832.) At the hearing, Plaintiff testified along with his mental health counselor, Mr. Roy Hines, and a vocational expert ("VE"), Mr. Thomas Dachelet.

**1.     Mr. Hines' Hearing Testimony**

Mr. Hines testified that he had worked with Plaintiff since 2005, and he was referred to Mr. Hines for case management and counseling services through the Fresno County Department of Behavioral Health. (AR 809-10.) He had seen Plaintiff for counseling approximately four times a year with the average length of a visit lasting approximately 60 minutes. (AR 811.) Plaintiff was initially seen for PTSD, but Mr. Hines stated that his primary impairment now stems from major depressive disorder. (AR 811.) Although Mr. Hines saw some improvement in Plaintiff's condition over the treatment period, "things tended to go down" because PTSD and depression are chronic problems. (AR 813.)

Plaintiff's ability to interact with co-workers and supervisors would be moderately limited. (AR 816.) Plaintiff has difficulty concentrating and focusing, and his mind "would not be in the job environment." (AR 814.) Mr. Hines stated he does "not feel that in a work environment [Plaintiff] could sustain himself." (AR 814.) However, Plaintiff was able to stay focused during the 60-minute counseling sessions (AR 814-15), but in a work environment Mr. Hines felt that "stress-related issues, pressures, deadlines and things of that nature and following instructions" would make it difficult for Plaintiff to maintain focus, and Plaintiff would not "be able to shift his mind to focus on the work and follow the instructions" (AR 815). However, Plaintiff would be able to follow simple, repetitive instructions, so long as it did not involve any complex tasking. (AR 815.) Plaintiff would nonetheless be "very impaired" in his ability to interact with other people, particularly with the general public. (AR 817.) Mr. Hines also stated that if Plaintiff had left things out of his history, such as ongoing polysubstance abuse problems, that could certainly affect his opinion of Plaintiff's abilities. (AR 818).

///

### 2. The ALJ's August 15, 2007, Decision

On August 15, 2007, the ALJ issued a decision, finding Plaintiff not disabled. (AR 77-85.) Plaintiff requested that the Appeals Council review the ALJ's August 15, 2007, decision (AR 70-71); Plaintiff's request was granted (AR 61-63). The Appeals Council noted that, with respect to Plaintiff's mental impairments, treatment notes from Fresno County Mental Health indicated that despite medications, Plaintiff continued to suffer from PTSD. (AR 61.) Among other things, the Appeals Council remanded the case to the ALJ to obtain further evidence concerning Plaintiff's mental condition. (AR 62.)

### 3. The ALJ's February 24, 2010, Decision

Following remand, further medical evidence was obtained, and a second hearing before an ALJ was held on December 8, 2009. (AR 833-79). Plaintiff appeared at the hearing and testified, through the assistance of counsel, and a VE also testified. (AR 833-79).

On February 24, 2010, the ALJ issued a new decision, finding Plaintiff not disabled. (AR 19-34.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since August 17, 2005; (2) has the following severe impairments or combination of impairments: right-knee degenerative arthritis, depressive disorder, not otherwise specified, history of cocaine dependence and cocaine induced mood disorder, and a history of polysubstance/alcohol abuse in reported remission; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) is capable of performing his past relevant work as a machine packager.

7

The ALJ determined that Plaintiff has the residual functional capacity ("RFC")[3] to perform medium-level[4] exertional work, and retains the ability to stand and/or walk for a total of six hours in an eight-hour workday and sit without restriction; the ALJ also determined that Plaintiff is able to kneel, squat, and climb stairs occasionally and has the ability to maintain attention and concentration to perform simple, repetitive tasks. While Plaintiff is unable to perform complex tasks, he is able to interact appropriately with co-workers, supervisors, and the general public. (AR 22-23.)

Plaintiff again sought review of the ALJ's decision before the Appeals Council. (AR 14.) The Appeals Council received additional medical evidence from Fresno County Mental Health dated July 14, 2009, through September 9, 2010, which was made part of the record. (AR 11.) On February 29, 2012, the Appeals Council denied review. (AR 8-10.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

**C.    Plaintiff's Appeal**

On April 5, 2012, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff asserts that the ALJ failed to consider that Plaintiff suffers from a severe case of PTSD. (Doc. 26, p. 3.)

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. Id. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Commissioner determines] that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

8

Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## **APPLICABLE LAW**

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from

9

performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## **DISCUSSION**

Plaintiff asserts that the ALJ erred in denying his application for disability benefits because he failed to consider that Plaintiff suffers from "a severe case of PTSD." Plaintiff notes that his medical treatment was almost exclusively at the Fresno County Department of Mental Health. (Doc. 26, p. 3.)

The Commissioner contends that Plaintiff fails to point to any substantial evidence demonstrating the ALJ erred by not finding Plaintiff's PTSD diagnosis disabling. (Doc. 31, 12:7-8.) The Commissioner asserts that the physicians and mental health professionals who provided opinions regarding Plaintiff's PTSD were considered by the ALJ, but the opinions were rejected with legally sufficient reasons.

**A.  The ALJ Rejected the Opinions of Drs. Sharman, Smith, and Morgott with Legally Sufficient Reasons**

In determining whether Plaintiff had severe impairments and in formulating Plaintiff's RFC, the ALJ weighed the opinions of treating, examining, and consulting physicians, assigning evidentiary weight to each. In considering Plaintiff's mental impairments, the ALJ ascribed great weight to the opinion of examining physicians Drs. Johnson and Michiel, and rejected the opinions of Plaintiff's treating psychiatrist Dr. Sharman, Dr. Smith, and Dr. Morgatt. The ALJ

also rejected a lay statement regarding Plaintiff's mental limitations rendered by Plaintiff's therapist, Roy Hines.

### 1. Legal Standard – Assessing Medical Opinions

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### 2. Analysis

The treating and examining physicians expressed conflicting opinions about the extent of Plaintiff's limitations arising out of his mental impairments. Thus, in rejecting any of the physician's opinions, the ALJ was required to state specific and legitimate reasons for doing so. *Lester*, 81 F.3d at 830.

In assessing Plaintiff's mental impairments, the ALJ considered the treatment that Plaintiff received from the Fresno County Department of Mental Health. The ALJ evaluated the form that Dr. Sharman completed in June 2006 indicating that Plaintiff was temporarily disabled for one year due to PTSD. (AR 28.) However, the ALJ gave this form no weight because it opined on the

11

ultimate question of disability, which is an issue reserved to the Commissioner. (AR 28.) Moreover, the ALJ refused to credit the form because it did not provide an opinion as to Plaintiff's work-related limitations and it lacked signs, symptoms, and clinical evidence to support the opinion. An ALJ may reject a treating physician's opinion that is conclusory and unsupported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole or by objective medical findings). The ALJ's rejection of Dr. Sharman's form opinion on the ground that it was unsupported with clinical findings and was conclusory is specific and legitimate and therefore legally sufficient.

The ALJ considered the statement provided by Dr. Smith in September 2007. The opinion was given little weight because the ALJ found it was based on the claimant's subjective complaints, which the ALJ found less than fully credible. Where the ALJ determines that the plaintiff is not credible, and the ALJ determines that a physician's opinion is essentially a rehashing of the plaintiff's own statements, that opinion may be undermined by the ALJ's adverse credibility determination. The ALJ, therefore, did not err in rejecting the opinion because it was based on Plaintiff's subjective complaints. *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion . . . premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (medical opinion premised on subjective complaints may be disregarded where record supports ALJ in discounting claimant's credibility). The ALJ also discounted the opinion because Dr. Smith used the term "likely" with respect to Plaintiff's limitations, which the ALJ found unconvincing as to Plaintiff's actual limitations. The ALJ noted that the form was completed with no quantitative limitations that would be useful in assessing Plaintiff's RFC. These are legally sufficient reasons to discount Dr. Smith's September 2007 opinion. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ reviewed an unsigned Psychiatric Review Technique form, but ultimately rejected the form. While it indicated that Plaintiff had marked limitations in activities of daily living and in maintaining concentration, persistence and pace, and extreme limitations in maintaining social functioning, the form was unsigned and it lacked signs, symptoms, and other clinical findings to support the ultimate conclusions reached. The ALJ is not required to accept any medical opinion that is conclusory or lacks sufficient clinical findings. *Thomas*, 278 F.3d at 957. This is a legally sufficient reason to reject the opinion. Moreover, without a signature, the ALJ found the form to have little evidentiary value in any event. This is a legitimate basis for assigning less weight to an opinion when it was not clearly written by an acceptable medical source. *See* 20 C.F.R. § 416.913(a); *see also Bergfeld v. Barnhart*, 361 F. Supp. 2d 1102, 1111 (D. Ariz. 2005) (holding that ALJ should not have considered unsigned medical report from consultative physician).

The ALJ also considered a form completed by Dr. Morgatt indicating that Plaintiff's disability was temporary. (AR 28, 708.) The statement was discounted by the ALJ, however, because the opinion was on the ultimate issue of disability, and an indication that the disability was temporary until November 2009 and did not meet the 12-month durational requirement. (AR 28.) The ALJ permissibly rejected Dr. Morgatt's opinion that Plaintiff was disabled. *See Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (reaffirming the treating physician's opinion is "not binding on an ALJ with respect to the . . . ultimate determination of disability."); 20 C.F.R. § 416.927(d)(1). Moreover, the fact that Dr. Morgatt indicated that Plaintiff's disability was only temporary does not comport with the 12-month duration requirement for purposes of social security benefits. This too was a specific and legitimate basis to reject the opinion. *See* 42 U.S.C. § 423(d)(1)(A) (2004) (to qualify for benefits under the Social Security Act, a claimant must prove, among other things, that he or she suffers from a medically determinable physical or mental impairment that "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); *see also Ramos v. Astrue*, No. 11-cv-4029-SP, 2012 WL 2912942, * 6 (C.D. Cal. July 17, 2012) (finding 12-month duration requirement specific and legitimate reason to reject physician's opinion that claimant was

temporarily and totally disabled).

In sum, the ALJ properly rejected the opinions of these physicians and instead credited the opinions of two examining physicians that Plaintiff suffered from Major Depressive Disorder, but retained the ability to perform simple, repetitive tasks. These opinions were further supported by Plaintiff's counselor, Mr. Hines, who testified that Plaintiff's primary diagnosis for which he was receiving treatment at Fresno County Mental Health was his Major Depressive Disorder. Mr. Hines also stated that Plaintiff retained the ability to complete and follow simple, repetitive instructions.

**B.     The ALJ Rejected the Lay Opinion of Roy Hines for Specific and Germane Reasons**

Mr. Hines, as a licensed clinical social worker, is not an "acceptable medical source." 20 C.F.R. § 416.913(a), (d)(1) (2012) (therapists are not considered acceptable medical sources under the regulations, but are instead treated as "other sources."). Opinions from "other sources" are not entitled to the same standard of review afforded physicians; instead, the opinions from "other sources" are reviewed under the standard afforded lay witnesses. *See Turner v. Comm'r*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (social workers are not considered acceptable medical sources under the regulations, but instead are treated as other sources). Thus, if an ALJ wishes to discount such opinions, the ALJ must give reasons for doing so that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Although crediting Mr. Hines' statement that Plaintiff could perform simple and repetitive tasks, the ALJ rejected other portions of Mr. Hines' opinion about Plaintiff's functional abilities. The ALJ weighed Mr. Hines' May 2007 statement indicating that Plaintiff's memory and concentration were poor and would prevent completion of tasks or assignments, and that Plaintiff is unable to work. (AR 642.) Mr. Hines also indicated that Plaintiff was uncomfortable around people and afraid they might harm him. (AR 643.) Mr. Hines noted that the onset date of Plaintiff's impairments was May 2006. (AR 643.) These statements were given no weight by the ALJ because Mr. Hines was not an acceptable medical source; the opinion gave a conclusion on the ultimate issue of whether Plaintiff is disabled, which is an issue reserved to the Commissioner; and the onset date given by Mr. Hines is inconsistent with Plaintiff's alleged onset date. These are

specific and germane reasons to discount Mr. Hines' May 2007 statements.

The ALJ also stated that, while Mr. Hines testified at the hearing that Plaintiff could not sustain employment, he admitted that if Plaintiff had not been forthright regarding his substance abuse, Mr. Hines' opinion regarding Plaintiff's abilities could certainly be affected by that. Mr. Hines believed that Plaintiff had not used alcohol since at least 2005, which was contrary to Plaintiff's own statements. Plaintiff's lack of reliable testimony regarding his drug use undercut Mr. Hines' opinion of Plaintiff's functioning. Further, Plaintiff's statements about his drug and alcohol use varied quite significantly. (AR 82.)

Finally, the ALJ refused to credit Mr. Hines' hearing testimony that Plaintiff could not maintain concentration because Mr. Hines acknowledged that Plaintiff could maintain attention for the hour-long counseling sessions, and Plaintiff had paid attention and responded appropriately throughout his hour and a quarter long hearing with the ALJ. (AR 82.) These are all specific and germane reasons to reject Mr. Hines' opinions regarding Plaintiff's abilities.

In sum, the ALJ properly considered and weighed Plaintiff's medical records, including those treatment records from the Fresno County Mental Health. The ALJ provided legally sufficient reasons for discounting certain portions of the medical evidence. The Court finds no error in the ALJ's analysis, and it is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that judgment be entered in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff Danny Murray.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 5, 2013**                             **/s/ Sheila K. Oberto**
                                                                            UNITED STATES MAGISTRATE JUDGE